## Pennsylvania Railroad Company *versus* Morgan.

1. The plaintiff, a child of five years, was playing, with its companion, on a railroad track in front of a train approaching at the rate of about six miles an hour. As soon as the children were signalled from the train and saw the danger, they started to run off the track, and were evidently about to escape safely, but, in doing so, the plaintiff's foot was caught in a crevice in the track; the engine was at once reversed and the brakes applied on the train, but not in time to avoid injuring the plaintiff. Nothing was done to stop the train until it was seen that the child was held fast and could not escape. The court below charged that "where a child is upon the track, those in charge of an approaching train are bound to stop on seeing it, because they have no right to assume the child knows its danger or has the capacity to flee from it, as in the case of an adult." *Held*, to be error, and that it was for the jury to have said whether the defendant's employees were negligent in not trying to stop the train as soon as they saw the children on the track, there being evidence to show that they were misled by the plaintiff's attempt to escape.

[Pennsylvania Railroad Co. *v.* Morgan.]

2. Where there was every reason to believe that the plaintiff would be off the track before the train would reach her, and her escape was frustrated by a mere accident, and everything was done to avoid the injury, as soon as her true condition was ascertained, the railroad company was not responsible for the injury.

May 18th 1876.　Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, and WOODWARD, JJ.　WILLIAMS, J., absent.

Error to the Common Pleas of *Blair county:* May Term 1876, No. 27.

This was an action on the case brought by Eliza Morgan, a minor, by her next friend, against the Pennsylvania Railroad Company, to recover damages for injuries from the alleged negligence of the company in running a train of cars over its road.

At the trial it appeared that at about five o'clock in the afternoon of October 15th 1874, a gravel and repair train, consisting of an engine, ten dump and truck cars and a caboose car, was backing on the Morrison's Cove Branch, on a slightly down grade, with the caboose car on the front and the engine on the rear.　The train hands in charge consisted of a fireman and a flagman, both of whom were on the front of the caboose car, upon the look-out, and also of the engineer and a brakesman, both of whom were upon the engine.

The place at which the accident occurred was a sparsely-settled district just outside of the borough lines of Hollidaysburg.

The evidence as to the speed of the train at the time was conflicting ; for the plaintiff, there was evidence tending to prove that the speed was very great ; but the evidence of the defendant, which seemed to have more weight, was that the train was not moving faster than six miles an hour, the rate allowed by the rules of the company.

There was but a very slight curve in the road at this point, and nothing to obstruct the view of the track for a long distance.　As the train approached a private crossing, and when it was at the distance of about 520 feet from the crossing, the hands on the front of the train saw the plaintiff, then a child of about five years of age, and a little boy, upon the track at this crossing.　Nothing was then done to stop the train.　When within 163 feet of the children one of the train hands called to the children to get off the track.　They started to run off immediately ; the boy ran straight across the track and got safely off ; the girl started to run diagonally off, and in doing so caught her foot inside of the rail, and between it and the plank, in the space left for the flange of the wheel.　As soon as the train hands saw her predicament, the train then being within about 100 feet of the child, they applied the brakes, and signalled the engineer, who reversed the engine.　Although every possible exertion was used, it was impossible to stop the train until the front car had run about 60 feet past the crossing.　Meantime the child's mother and one of the neighbors had run to her assistance and endea-

[Pennsylvania Railroad Co. *v.* Morgan.]

vored to extricate the foot.   Not being able to do this in time, as the train passed, they held the child's body as far out of the way as possible, so that the front wheel of the caboose car, sliding under the pressure of the brake, appeared to have pushed the plaintiff's foot out of her shoe, lacerating the foot and producing, as was testified, a permanent injury.   The shoe was left sticking in the space between the rail and the plank, where it was first caught.

It appeared that the brakes and all other parts of the cars were the best in use, and in good order, and that the train was properly manned by experienced and competent men.

There was some evidence that the plaintiff's foot was caught in a hole *outside* of the track, negligently left there by the defendant, but the weight of the evidence was clearly, that the hole was, as above stated, *inside* of the rail.

It did not appear that the plaintiff was lawfully upon the track at the time of the accident.   The crossing upon which she was playing at the time was entirely a private one, the use of which was confined to a few families, including that of the plaintiff, but it was built and maintained by the company.

The court below, Dean, P. J., charged, *inter alia*, as follows:—

" If, however, the weight of the evidence should satisfy you that the injury sustained by the plaintiff was not the result of a negligent construction of the crossing, then you will turn your attention to the other question in the case: [Was the plaintiff injured, as averred in the second branch of the plaintiff's case, by reason of the swift, reckless and negligent running of their cars up to and upon this crossing, in the street of a populous town, this plaintiff being, as she had a right to be, upon the crossing for the purpose of going over it at that time?]

" In considering and determining their respective rights, the circumstances surrounding them at the time must be considered; the populousness of the neighborhood at that particular place; the approaches to the crossing; the distance at which the crossing and those upon it can be seen by those in charge of or running trains, and all the circumstances calculated to throw light upon the conduct of the defendant's servants, and to show whether they acted as prudent men should act—with that ordinary care which men under such circumstances should be expected to use.

" What is want of ordinary care, depends upon the circumstances of this particular case.   [What would be ordinary care in running a train of cars through a farm, might be gross recklessness in running the same train of cars through the streets of a town, or over a crossing, or into a station.]   The circumstances in a particular case must always be considered by the jury in determining whether at a particular moment and place there was ordinary care, or the want of it.

" The Supreme Court, in one of the late cases, says, in reference

[Pennsylvania Railroad Co. v. Morgan.]

to the degree of care which is to be exercised under such circumstances, and which is required under such circumstances: ' The degree of care required of the servants of the company in such a case is in some measure dependent upon the capacity of the injured party. If an adult should place himself on the railroad, where he has no right to be, but when the company is entitled to a clear track and the benefit of the presumption that it will not be obstructed, and he should be run down, the company would be liable only for wilful injury,' that is, for wilfully running the cars over him, ' or for gross or wanton negligence. But, if a child of tender years should do so, and suffer injury, the company would be liable for want of ordinary care.' While in the case of an adult they would be liable only for wilfully running over the man, or for gross negligence amounting to wantonness and recklessness in running over the adult, yet in the case of the child they are liable for want of ordinary care. ' The principle may be illustrated thus: If the engineer saw the adult in time to stop his train, but the train being in full view, and nothing to indicate to him a want of consciousness of its approach, he would not be bound to stop his train. Having the right to a clear track, he would be entitled to the presumption that the trespasser would remove from it in time to avoid the danger; or, if he thought the person did not notice the approaching train, it would be sufficient to whistle to attract his attention without stopping. But, if, instead of the adult, it were a little child upon the track, it would be the duty of the engineer to stop his train upon seeing it. The change of circumstances from the possession of capacity in the trespasser to avoid the danger, to a want of it, would create a corresponding change of duty in the engineer. In the former case, the adult concurring in the negligence causing the disaster, is without remedy, in the latter, the child, not concurring from a want of capacity, the want of ordinary care in the engineer would create liability. But, if the train were upon the child before it could be seen, or if it suddenly and unexpectedly threw itself in the way of the engine, the engineer being incapable of exercising the measure of ordinary care to save it, the child would be without remedy, for the company's use of its track is lawful, and the presence of the child upon the track is unlawful.'

" [The Supreme Court say—and the difference in the facts between that case and this would not materially affect the ruling— ' Where a child is upon the track, they are bound to stop, upon seeing it, because they have no right to assume that the child knows its danger, or has capacity to apprehend danger, or has the capacity to flee from it as in the case of an adult.'] Of course, if they had stopped it before it reached the crossing the child would not have been injured. In failing to stop the train before it reached the child, did they fail to exercise that ordinary care which, under the circumstances, a man of ordinary prudence and caution,

conducting a business of that kind at that particular place and surrounded by the particular circumstances, should have exercised?

" [It was the duty of those on the train, on seeing the child or children of this age upon a crossing, to stop the train until the children either ran off, or until those in charge of the train got off and removed them. Children of such tender years are not to be expected to have the capacity to apprehend or avoid danger, and it was the duty of those on the train to get off and remove them, if they could get them off the crossing in no other way. It occurs to us, however that, even if this be a correct view of the evidence, as taken by defendant, it does not follow from the facts necessarily that there was an absence of negligence on the part of defendant. Was not the failure of the child to get from danger owing to its want of care in avoiding the crevice between the plank and the rail; or was not its foot caught and there held because of its physical incapacity to remove it? Are not these facts for your consideration, assuming them to be facts? Would not an adult have avoided sticking his foot between the plank and the rail, or, having got it there, would he not, with the exercise of more physical effort, have extricated it instantly, in view of the approaching danger, even if he had left his boot in the crevice, or to some extent injured his foot? If so, if the child either had not the capacity to avoid the dangerous crevice, or if it had not the physical capacity to extricate it after it was caught, then it comes back to the same question as in the case where the child had been run over without having attempted to escape.]

" The defendant's servants were bound to exercise such care as they could have exercised under the circumstances, and if they failed to do what prudent men ought to have done under the circumstances, they are liable for the result of their negligence to this plaintiff in the amount of damages sustained by her.

" The plaintiff alleges that there was in this case what amounted to gross negligence. The plaintiff alleges that they were running at a high rate of speed through a populous town. You will remember the testimony from which plaintiff claims this fact to be made out. As has been said, the successful management of a railroad requires that the trains shall run at a high rate of speed; but then care requires that they shall not run at a high rate of speed through the streets of a town."

The defendant offered the following points, both of which were refused:—

2. Fitzharris, the fireman, having, when the car was within about 163 feet of the child, warned her by hallooing at her to get off the track, and she having started to move off, he was entitled to the presumption that she would get away from the track in time to avoid the danger, and under these circumstances there was no duty imposed upon the men in charge of the train to make an

[Pennsylvania Railroad Co. v. Morgan.]

effort to stop, and the failure to do so was not negligence; they were not negligent in failing to use precaution when they had no reason to apprehend injury to the child.

3. The child's foot getting fast was an unforeseen contingency which the defendants could not be expected to anticipate or guard against, and if the jury believe the child would have got out of the way of the train but for that accident, the defendants are not responsible for the injury.

The jury found a verdict for the plaintiff. After judgment thereon the defendant below took this writ of error, assigning for error the parts of the charge in brackets above, and the answer to the above points.

*D. J. Neff*, for plaintiff in error, cited Telfer *v.* Northern Railroad Co., 1 Vroom 188; Bannon *v.* B. & O. Railroad Co., 24 Md. 108; s. c. 5 Am. Law Reg. 477; P. & R. Railroad Co. *v.* Spearen, 11 Wright 300; C., B. & Q. Railroad Co. *v.* Stumps, 55 Ill. 367; Singleton *v.* Eastern Counties Railway Co., 7 C. B. N. S. 287; Wright *v.* Mald. & Mel. Railroad Co., 4 Allen 283; Glassey *v.* Hestonville Pass. Railroad Co., 7 P. F. Smith 172; Pitts., All. & Manch. Railroad Co. *v.* Pearson, 22 Id. 169.

*S. S. Blair*, for defendant in error.

Chief Justice Agnew delivered the opinion of the court, October 10th 1876.

The charge of the judge in this case is so generally fair and accurate we feel some difficulty in coming to a conclusion which results in a reversal. But by inadvertence, or possibly a slight confusion, he seems to have fallen into an error, which excluded the defence from its only probable ground of success. We concur in the view of the judge, that the foot of the plaintiff must have been caught in the space left for the flange of the car-wheels, between the rail and the inner plank of the crossing; and therefore that the injury arose from no defect in the construction of the crossing. The plaintiff's case evidently depended on the second branch of alleged negligence, to wit: in running the train at an immoderate rate of speed in disregard of the place and the circumstances of the occurrence. The judge rightly charged that negligence was a question for the jury, to be decided upon the circumstances in evidence. His error was a substantial denial of this principle in a subsequent part of the charge. The witnesses for the defendants testified that the speed of the train was not too rapid, but only at the rate of about five or six miles an hour; that the train was fully under control, the hands in their proper places; that the train could be stopped in a space less than its own length, and in fact was stopped before the engine, at the rear end of the train, had reached the crossing; that

when the children were seen on the crossing the flagman on the front car hallooed to them, and they started to run off, the boy running straight across the track, and the girl obliquely; that, to every appearance, they knew their danger and were likely to avoid it, the boy escaping entirely, and the girl (the plaintiff) reaching the rail and apparently passing off. In a moment or two the flagman saw that the child was fast, and heard her hallooing, and gave the signal for stopping immediately to the engineer, who reversed his engine, and whistled down-brakes. At this time the front car was between one hundred and one hundred and twenty feet from the crossing. Mrs. Morgan, the mother of the child, hearing the cries of the child and of her neighbor, Mrs. Meinthal, ran a distance of sixty feet, and Mrs. Meinthal a distance of one hundred feet, to the child, and made three or four attempts to extricate the foot before the cars reached the crossing, and the mother then held her body out from the track while the wheel pushed the foot out, leaving the shoe in the crevice. The wheels were sliding under the influence of the brake, otherwise, if turning, all the evidence shows that the foot would have been cut off. These facts are also strong evidence of the slow speed of the train, Mrs. Meinthal having run nearly as far as the train had to go, when the signal for down-brakes was given. Under these circumstances, the defendants contended that no duty lay upon those having charge of the train to come to a full stop until it was discovered that the little girl's foot was caught, or for some reason she could not escape, as appearances had indicated she would; and then, that everything possible was done to avoid the injury. The weight of this argument was felt by the judge, who said: "To some extent, in defendant's view of the facts, the reason for imposing upon those in charge of the train a different course of conduct than when an adult is on the track, seems to fail." He had stated the duty as to an adult in these words: "If the engineer saw the adult in time to stop his train, but the train being in full view, and nothing to indicate to him a want of consciousness of its approach, he would not be bound to stop his train. Having the right to a clear track, he would be entitled to the presumption that the trespasser would remove from it in time to avoid the danger; or, if he thought the person did not notice the approaching train, it would be sufficient to whistle to attract his attention, without stopping." But the judge, referring to the view above stated, added, "that, even if this be a correct view of the evidence as taken by the defendant, it does not follow necessarily that there was an absence of negligence on part of the defendant." He then puts these questions: "Was not the failure of the child to get from danger owing to its want of care in avoiding the crevice between the plank and the rail? Or was not its foot caught and held there, because of its physical incapacity to remove it?" Referring these questions to the jury, he then comes to the instruction, which it

[Pennsylvania Railroad Co. *v*. Morgan.]

seems to us is faulty: "If so (he says), if the child either had not the capacity to avoid the dangerous crevice, or if it had not the physical capacity to extricate it, after it was caught, then it comes back to the same question as in the case where the child had been run over without having attempted to escape." That case was stated in this precedent instruction: "Where a child is upon the track, they are bound to stop on seeing it, because they have no right to assume that the child knows its danger, or has the capacity to apprehend danger, or to flee from it as in case of an adult." The case, as thus put by the judge, was therefore just as if those in charge of the train had not been misled by the attempt of the children to escape, and the actual escape of one of them. Its effect was wholly to exclude the defence, notwithstanding the jury was bound, under the evidence, to find that there was every reason to believe that the children would be off the crossing before the train would reach it, and that the girl's escape was frustrated by a mere accident; and that everything possible had been done to avert the injury as soon as her true situation was discovered, and that in all else, speed, management and control of the train, there was no fault on the part of the company. The quotations given from the charge were taken from the case of Philadelphia & Reading Railroad Co. *v*. Spearen, 11 Wright 300. But that case states no inexorable rule, that a train must stop under all circumstances, when a child is seen upon the track; on the contrary, if its appearance there is so sudden and unexpected that the engineer is incapable of exercising the necessary measure of care to save it, the child is without remedy. In principle, this is not different from a case where a sudden change of circumstances causes an accident to a child, where immediately before there was no reason to believe an injury would ensue. The instruction of the learned judge cannot be sustained unless we hold that in no case and under no circumstances will a railroad company be excused in the rightful exercise of its right of passage on its own track, unless it stops its train whenever a child is seen upon the track. A principle so general would include even the case of a child led by the hand by its adult nurse. The jury then would not determine the question of negligence, but the law would determine it for them. But clearly it is for the jury to say whether it is negligence not to stop, even in the case of a child; for the question depends on a proper view of all the facts. The case did not go to the jury on the question of reasonable speed, under the circumstances of time, place, person, &c., but under this instruction the jury was bound to find negligence in the company, because the train was not stopped before it reached the crossing.

Judgment reversed, and a *venire facias de novo* awarded.